**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| NANCY SMITH | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 6:26-cv-03548-MDH |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA R. ALBREKTSON, M.D. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO MOTION TO STAY DISCOVERY**

Defendant asks this Court to stay enforcement of a state court discovery order that was entered after months of adversarial briefing, multiple supplemental submissions, and a full evidentiary hearing. The Court Order instructed him to comply by September 1, 2026. Rather than comply, or seek a writ from the Missouri Court of Appeals, Defendant removed this case to federal court in the final hours of the production deadline and simultaneously filed this Motion to Stay. The stay motion should be denied because: (1) this Court lacks jurisdiction and the case should be remanded; (2) Defendant cannot establish the traditional stay factors; (3) 28 U.S. § 1450 preserves the pre-removal Court Order; and (4) a stay would reward gamesmanship and prejudice Plaintiff, an elderly and injured plaintiff with a January 11, 2027 trial setting in Greene County, Missouri.

**BACKGROUND**

Plaintiff Nancy Smith suffered a stroke and seizure at Mercy Hospital Springfield on March 29, 2023, after Defendant Albrektson failed to identify a plainly visible blood clot on her CT scan. Plaintiff filed suit in March 2025. In discovery, Plaintiff sought documents reflecting Defendant's history of prior misreads and discipline, to further establish his pattern of reading imaging studies at a reckless pace. This pursuit is not without reason. Defendant Albrektson has written about the economic benefits of reading imaging quickly, wherein he published online descriptions of how

he can earn more money the faster he can read imaging. Defendant's known high miss rate, combined with publicly available proclamations about making more money the faster he reads, caused Plaintiff to seek discovery on his discipline and misses.

On January 16, 2026, Defendant filed a Motion for Protective Order, asserting various privileges. The Greene County Circuit Court held a full hearing in April 2026. After the hearing, the Court gave Defendant an extraordinary additional opportunity, ordering him to "specifically identify each privilege being asserted, and for each one to either (a) provide a factual basis from which this Court can assess each requirement for the privilege to apply, with specificity, or (b) withdraw the assertions of that privilege." Defendant filed Fourth and Fifth supplemental briefs that failed to satisfy the Court's requirements. In the meantime, the Court entered its Order on Plaintiff's *Third Motion to Compel*, ordering monetary sanctions against the law firm Sandberg Phoenix & von Gontard in the amount of $21,643.70. **June 30, 2026 Order.**

On August 18, 2026, the Court entered its Order denying Defendant's Motion and granting Plaintiff's *Fourth Motion to Compel*: [1]

> Court concludes there is no generic "quality assurance" privilege, and Defendant Albrektson has failed to show the applicability of any recognized privilege (including RSMo 537.035 or PSQIA protections for PSWP under 42 U.S.C. 299b-22) to any of the discovery at issue.

**August 18, 2026 Order.**

Defendant was ordered to comply by September 1, 2026. Instead of complying or seeking a writ in the Court of Appeals, Defendant removed this case to federal court late in the afternoon

[1] Plaintiff's *Third Motion to Compel*, wherein Defendant objected to producing Plaintiff's own medical records in Defendant's counsel's possession, was litigated for months as well. That motion required dozens of pages of briefing and two hearings due to Defendant's obstinance. The Circuit Court found that Defendant's counsel interfered with Plaintiff's counsel inspecting or copying records at a deposition and refused to produce documents afterward. **November 18, 2025 Order.**

of September 1 and simultaneously filed this motion. The case is currently set for trial on January 11, 2027. Because of this removal, that trial date is now virtually impossible to keep.

Defendant removed this case to Federal Court because he lost a discovery dispute over Plaintiff's *Fourth Motion to Compel Discovery*. He is running from the state court which has already sanctioned him due to his conduct, and apparently has strategically decided to seek refuge here instead of taking the proper step of seeking a writ in the Court of Appeals. Now in federal court, he is attempting to relitigate the very issue he already lost.

## LEGAL STANDARD

In determining whether to grant a motion to stay discovery, Courts consider factors, including the likelihood of success on the merits; irreparable harm absent the stay; the breadth of the pending discovery; the balance of harms in delaying discovery against the possibility that the underlying motion will dispose of the case; the public interest; and judicial economy. *United States ex rel Donegan v. Anesthesia Assocs. Of Kansas City, PC*, 2014 WL 12618074 (W.D. Mo. January 7, 2014); *see also Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The Court must balance these factors, and a weak showing on one may be offset by a strong showing on another. *Id.* Where the moving party cannot establish likelihood of success on the merits, a stay is generally inappropriate. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

## ARGUMENT

Remaining consistent with his Notice of Removal, Defendant makes no effort to cite any authority or argue any of the factors applicable to the request made in his Motion to Stay. Plaintiff will address the factors below, which demonstrate that a stay is not warranted here.

### I. This Court Lacks Jurisdiction

Plaintiff has filed a Motion to Remand demonstrating that this Court lacks jurisdiction. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("[T]he requirement that

jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States.”). The Supreme Court has consistently held that questions of subject matter jurisdiction must be resolved before a court proceeds to the merits of any motion. *Id.*

Defendant’s stay motion asks this Court to exercise authority over a valid state court discovery order before confirming it has the power to do so. If this case is remanded, the stay motion becomes entirely moot, and any stay this Court granted in the interim will have unnecessarily interfered with a lawfully entered state court order and further delayed Plaintiff’s access to justice. The Court should rule on Plaintiff’s Motion for Remand and render this moot.

## II. Defendant Cannot Demonstrate Likelihood of Success on the Merits

Likelihood of success on the merits is a threshold factor in the *Dataphase* analysis. To satisfy this factor, Defendant is required to demonstrate to this Court: (1) that it has jurisdiction; and (2) that he is likely to establish the PSQIA privilege that he failed to establish below.

### A. The Removal is Invalid

As set forth fully in Plaintiff’s Motion to Remand, which Plaintiff incorporates by reference here, Defendant’s Notice of Removal is defective on multiple independent grounds.

**The well-pleaded complaint rule.** Federal question jurisdiction must appear on the face of the plaintiff’s complaint. *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 153 (1908). Plaintiff’s petition asserts state law medical negligence. The PSQIA appears nowhere in it because the PSQIA is not an element of Plaintiff’s claim. Rather, it is a discovery defense asserted to block production of relevant documents. Federal defenses cannot create federal jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703 (8th Cir. 2023). This rule has been settled law since 1887. *Franchise Tax Bd. v. Const. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983).

**The *Grable* doctrine does not apply.** Defendant invokes the narrow embedded federal question doctrine of *Grable & Sons Metal Prods. v. Darue Eng.*, 545 U.S. 308 (2005). But *Grable* requires a federal issue necessarily embedded in the plaintiff's cause of action itself, not a federal question arising from a defendant's collateral discovery dispute. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Whether Defendant's documents qualify as PSQIA work product is not an element of Plaintiff's negligence claim. It is a fact- and case-specific discovery dispute that is not "substantial" in the sense *Gunn* requires. It has no significance to the federal system at all. *Id.* at 260.

**The removal is untimely.** Defendant invoked the PSQIA on January 16, 2026, six months before removal. The removal clock runs from when removability first becomes ascertainable. *Davis Neurology PA v. DoctorDirectory.com LLC*, 896 F.3d 872, 875 (8th Cir. 2018). A party who invokes a federal statute as a discovery shield for six months and then removes after losing cannot claim the federal question only became ascertainable when he lost at the state court.

**No court has ever endorsed his theory.** Defendant cites no case anywhere in which a federal court has held that a state court's adverse PSQIA ruling creates federal question jurisdiction sufficient to support removal. In twenty years of PSQIA litigation, this theory has never been accepted. That complete absence of authority undermines any claim of likelihood of success.

**B. Even if Jurisdiction Existed, the PSQIA Privilege Has Not Been Established**

Setting aside jurisdictional defects of this case, Defendant's stay motion rests on an assumption, with no facts or evidence to support it, that the documents at issue constitute patient safety work product. The motion recites the statute's language at length but contains no factual showing: no affidavit, no declaration, no evidentiary submission. This is not a technical requirement. It is the threshold predicate for the privilege to exist. Notably, this lack of evidence to support a claim is consistent with the six-month attempt to establish the privilege in state court. They were given numerous chances to support their position, and failed time after time. After

providing no evidence to this Court, as it did below, Defendant asks this Court to reach a different conclusion. That is not a demonstration of likelihood of success. It is a request for a second opinion on a bad argument, in the wrong court, after losing the argument the first time around.

Moreover, on the merits, the PSQIA does not sweep as broadly as Defendant claims. The statute expressly excludes "original source" information or original records from its protection. 42 U.S.C. 299b-21(7)(b). Information that exists independently of any patient safety evaluation system, including business records, contracts, communications about clinical care, is not privileged simply because a copy was later provided to a patient safety organization. *Id.* Defendant has produced **no evidence whatsoever** that any information was provided to a patient safety organization, which is why he lost the motion in the first place. The categories of documents at issue are quintessential original-source and business records that no reasonable reading of the PSQIA protects.

## III. Defendant Cannot Demonstrate Irreparable Harm and the Breadth of the Pending Discovery is Narrow

Irreparable harm must be likely, not merely possible. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 162 (2010). Here, there is no harm whatsoever in allowing a state court's discovery order to remain in effect. If Defendant believes that any of the documents ordered to be produced are confidential, he can designate them as such under the protective order. If he believes that any of the documents are inadmissible at trial, he can move in limine to restrict their use.

Further, courts of equity do not grant relief to parties who manufacture their own emergencies. *Benisek v. Lamone*, 585 U.S. 155, 159-160 (2018) (when "the delay largely arose from a circumstance within [the requesting party's] control" the "unnecessary, years-long delay in asking for preliminary injunctive relief weighed against their request"). Defendant has litigated this privilege since January 16, 2026. He filed a motion for protective order, opposed Plaintiff's

fourth motion to compel, presented his argument at a full hearing, and was given additional chances to present more evidence. He could have attempted this futile removal at any point in time. He could have sought a writ at the Missouri Court of Appeals. Courts should not exercise their equitable authority to rescue parties from the consequences of their own litigation choices. *Id.*

Additionally, the breadth of the discovery at issue is relevant. The discovery at issue here is six requests for production issued to an individual defendant. It has already been objected to, litigated, and pored over for months. It is not overly broad.

**IV. The Balance of Harms Strongly Favors Plaintiff**

Defendant frames the stay as a neutral preservation of the status quo. It is not. The status quo is that Defendant has failed to comply with a valid, enforceable state court order requiring production by September 1, 2026. Issuing a stay of the discovery order would reverse the status quo in Defendant's favor while Plaintiff bears the harm. The harms are concrete, immediate, and serious:

**The trial date.** This case is set for trial on January 11, 2027. Plaintiff is a stroke victim who has been litigating since March 2025. The removal has already effectively destroyed the trial date, as the jurisdictional question cannot be briefed, decided, and appealed in time to restore a meaningful trial preparation period. The parties have a backup trial date of July 8, 2027.

**The punitive damages motion.** Under Missouri law, Plaintiff must file her Motion for Leave to Seek Punitive Damages no later than 120 days before the final pretrial conference. That deadline passed on September 9, 2026, a few days after Defendant removed. The discovery Defendant refuses to produce is central to Plaintiff's punitive damages theory, and Defendant is aware of this as it has been discussed in open court several times. Defendant is also aware of the deadline, as it has been discussed numerous times with the Court during scheduling conversations.

The Court's Order to produce the documents so that Plaintiff had a week to prepare her punitives motion was not coincidental. The Court clearly intended Plaintiff to have time to file her motion.

Defendant's decision to remove this case on September 1 – eight days before the deadline – was not coincidental. It was calculated to deprive Plaintiff of the discovery needed to support her motion, while destroying the deadline itself through the delay caused by removal.

Against these concrete, serious harms, Defendant offers only the speculative harm of disclosing documents that a court already found are not privileged. The balance is not close.

## V. The Public Interest and Judicial Economy Do Not Favor a Stay

Defendant argues that the PSQIA's patient safety purposes support a stay. This argument misreads the statute and the public interest.

**The PSQIA's purpose is not served here.** The PSQIA was enacted to improve patient safety by encouraging voluntary, candid reporting within the healthcare system. A radiologist who wants to avoid accountability for a history of missed reads by claiming PSQIA protection, ***without establishing the factual predicate for that protection***, is not furthering the statute's patient safety purposes. He is inverting them.

**The public interest in patient safety goes both ways.** There is substantial public interest in identifying physicians who systematically misread radiological imaging and ensuring that patients harmed by those misreads can obtain justice. Nancy Smith suffered a stroke and seizure. The discovery she seeks is designed to establish whether Defendant's dangerous pace of reads is a pattern. This information is directly relevant to the public interest in patient safety.

**Judicial Economy.** Staying a discovery order entered after six months of adversarial proceedings, based on a removal theory with no supporting authority, serves no legitimate public interest. It rewards a defendant who aggressively litigated and lost in state court for improperly using a procedural mechanism to reset the clock in federal court. If this tactic is allowed to succeed

without consequence, sophisticated defendants in state court malpractice cases will routinely assert federal discovery privileges, litigate them to adverse conclusions, and then remove to force re-litigation in federal court. That is not a public interest this Court should endorse.

## VI. Section 1450 Does Not Mandate A Stay

Defendant cites 28 U.S.C. § 1450 as authority for the stay, arguing that this Court inherited the Court Order upon removal and has the authority to modify or dissolve it. Section 1450 is not a stay mechanism. It provides that pre-removal state court orders remain in full effect after removal until the federal court acts. It gives this Court discretion to modify or dissolve state court orders; it does not require or presumptively favor staying them.

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423 (1974), which is the only case Defendant cites in his entire Motion to Stay, stands only for the proposition that federal courts apply federal standards to pre-removal orders.

WHEREFORE, for the reasons stated herein, plaintiff respectfully requests this Court deny Defendant's Motion to Stay, and for all other relief the Court deems just and proper.

**Respectfully submitted,**

**GORNY DANDURAND, LC**

**By: *<u>/s/ Christopher D. Dandurand</u>***
**STEPHEN M. GORNY MO #45417**
**CHRISTOPHER D. DANDURAND MO #63775**
**4330 Belleview Avenue, Suite 200**
**Kansas City, MO 64111**
**(816) 756-5071 – Telephone**
**(816) 756-5067 – Facsimile**
**steve@gornylawfirm.com**
**chris@gornylawfirm.com**

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on September 15, 2026, this document was filed electronically with the Clerk of court using the CM/ECF system which will provide notice of electronic filing to all counsel of record.

By: /s/ Christopher D. Dandurand
ATTORNEY FOR PLAINTIFF