**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| NANCY SMITH | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 6:26-cv-03548-MDH |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA R. ALBREKTSON, M.D. | ) | |
| | ) | |
| Defendant. | ) | |

# **MOTION TO REMAND**

Defendant removed this case to Federal Court because he lost a discovery dispute over Plaintiff's *Fourth Motion to Compel Discovery*.[1] The purported "federal question" presented by Defendant materialized only after Defendant lost the motion and hired two appellate attorneys to manufacture an argument to avoid compliance with the Court's Order. Indeed, for six months, the parties litigated this discovery dispute in the Greene County Circuit Court with no mention of a federal question. After briefing, the Court held a full hearing in April of 2026, and let Defendant file *more briefing* in support of his opposition to discovery. The Court instructed:

> Extensive argument presented on competing motions. Court allows Defendant Albrektson through Wednesday, April 29, to specifically identify each claimed privilege being asserted, and for each one to either (a) provide a factual basis from which this Court can assess each requirement for the privilege to apply, with specificity, or (b) withdraw the assertions of that privilege.

**April 15, 2026 Order.**

[1] Plaintiff's *Third Motion to Compel*, wherein Defendant objected to producing Plaintiff's own medical records in Defendant's counsel's possession, was heavily litigated for months as well. That motion required dozens of pages of briefing and two hearings due to Defendant's obstinance. The Circuit Court found that Defendant's counsel interfered with Plaintiff's counsel inspecting or copying records at a deposition and refused to share the records after the deposition. **November 18, 2025 Order.** After further briefing and argument, the Court entered monetary sanctions against the law firm Sandberg Phoenix & von Gontard in the amount of $21,643.70. **July 30, 2026 Order.**

In other words, Defendant was given another shot to establish the nebulous privileges he asserted without support. No federal question issue was raised at that time. The parties filed dozens of pages of briefing, including Defendant's *Fourth* and *Fifth* supplements – none of which mention a federal question. The Circuit Court ruled against Defendant on August 18, 2026:

> Court now takes up "Defendant Joshua Albrektson, M.D.'s Motion for Protective Order on Quality Assurance, Peer Review, and Federal Patient Safety and Quality Improvement Act Privileges," as well as "Plaintiff's Fourth Motion to Compel -- Defendant Albrektson." Having fully considered the motions and the various supplemental filings with respect to each, in addition to arguments presented at the hearing, Defendant Albrektson's motion is now DENIED and Plaintiff's motion is GRANTED, for the reasons stated in Plaintiff's briefing. In particular, Court concludes there is no generic "quality assurance" privilege, and Defendant Albrektson has failed to show the applicability of any recognized privilege (including RSMo 537.035 or PSQIA protections for PSWP under 42 U.S.C. 299b-22) to any of the discovery at issue. Defendant Albrektson's objections to RFP Nos. 23, 24, 25, 27, 28, 29, and 32 are OVERRULED, and Defendant Albrektson is ORDERED to respond and produce any responsive documents by Tuesday, September 1, 2026, subject to the limitations on scope reflected in Plaintiff's motion.

**August 18, 2026 Order.**

The Circuit Court ordered compliance by September 1, 2026. Rather than comply with the Court's Order or seek a writ in the Court of Appeals, he hired additional lawyers to remove this action to Federal Court on the deadline date, and simultaneously moved to stay the Order.

Trial is set to begin January 11, 2027. Due to this frivolous removal, it is nearly impossible that the parties will keep that trial date. The lack of any credible basis or case authority supporting removal demonstrates that this removal is merely a continuation of obstruction and an attempt to delay trial in this case. Plaintiff Smith requests remand and an award of attorney fees and costs.

## SUMMARY OF ARGUMENT FOR REMAND

Defendant Joshua R. Albrektson, M.D.'s Notice of Removal is meritless both factually and legally and this matter should be remanded to state court for the following reasons:

I. **The Well-Pleaded Complaint Rule:** There is no federal-question jurisdiction because no federal cause of action appears on the face of Plaintiff's petition, and a failed claim of federal privilege raised to oppose discovery cannot support removal.

II. **The *Grable/Gunn* Embedded Federal Question Doctrine Does Not Apply:** Defendant's Notice fails to satisfy the requirements for the limited embedded federal question doctrine.

III. **The Notice is Untimely and Improper:** Under Defendant's theory, jurisdiction was ascertainable no later than January 16, 2026. Removal is untimely by over six months.

## STANDARD OF REVIEW

A plaintiff is the master of her claim, *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987), and her choice of a state forum is entitled to considerable deference. *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). The removing defendant bears the burden of establishing federal jurisdiction. *In re Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). Any doubt about whether removal is proper must be resolved in favor of state-court jurisdiction and remand. *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007). Federal removal statutes are strictly construed because removal implicates respect for states as independent sovereigns. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) (federal courts must "scrupulously confine their own jurisdiction to the precise limits which the statute has defined"). "Out of respect for state courts, [the Supreme] Court has time and again declined to construe federal jurisdictional statutes more expansively than their language, most fairly read, requires." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 389 (2016). The Court must "be attentive to a satisfaction of jurisdictional requirements in all cases." *Sanders v. Clemco Indus*., 823 F.2d 214, 216 (8th Cir. 1987). "The party invoking jurisdiction bears the burden of proof that all prerequisites to jurisdiction are satisfied." *Hutchen v. Wal-Mart Stores E. I., LP*, 555 F. Supp. 2d 1013, 1016 (E.D. Mo. 2008).

## ARGUMENT

**A. REMOVAL IS IMPROPER WHERE IT VIOLATES THE WELL-PLEADED COMPLAINT RULE, DOES NOT PRESENT AN "EMBEDDED FEDERAL QUESTION", AND IS UNTIMELY.**

**I. The Removal Violates the Well Pleaded Complaint Rule**

The well-pleaded complaint rule is fatal to Defendant's removal because federal question jurisdiction under 28 U.S.C. § 1331 must arise from the face of the plaintiff's complaint – not from the result of losing a discovery dispute (or even from an asserted defense). Plaintiff's petition sets forth a straightforward claim of medical negligence under Missouri law. No federal cause of action appears in her petition, nor does one appear anywhere in papers filed with the Court. That ends the inquiry, because "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint," and a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Defendant's removal rests on his failed invocation of a federal privilege that can, if it applies to the facts of a case, shield peer review and patient safety work product from discovery. That is a discovery rule, not a federal claim. Assuming for purposes of argument that this discovery rule amounts to a "federal defense," the Supreme Court has spoken on that as well. "[A] case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393. A defendant "cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. *Id.* at 398-99. Otherwise, "the plaintiff would be master of nothing." *Id.*

The Supreme Court confirms that "congress has not authorized removal based on a defense or anticipated defense federal in character." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 472 (1998).

The Eighth Circuit concurs: "the potential applicability of a defense arising under federal law doesn't create jurisdiction." *Minn. by Ellison v. Am. Pet. Inst.*, 63 F.4th 703, 709 (8th Cir. 2023).

Plaintiff's petition alleges state law medical negligence. The privilege asserted by Defendant was raised to block discovery. It is entirely a defensive shield. That ends the inquiry. There are only two exceptions to the well pleaded complaint rule: complete preemption and the substantial-federal-question doctrine of *Grable*. Defendant does not assert complete preemption.

## II. The *Grable/Gunn* Embedded Federal Question Doctrine Does Not Apply

The remaining exception reaches only a "special and small category" of state-law claims that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). The requirements are conjunctive; all four must be met. *HJR Equip., Inc. v. City of Kansas City, Missouri*, 603 F.Supp.3d 696, 703 (W.D. Mo. 2022). Federal Courts use terms like "special", "small", "slim", and "rare" when describing circumstances under which embedded federal question jurisdiction lies. *See Roberts v. Smith & Wesson Brands, Inc*., 2023 WL 6213654, *12 (N.D. Ill. Sept. 25, 2023).

Here, Defendant accurately recites the requirements in the correct order, but the application is conclusory. He does not present any authority, supportive or contrary, likely because minimal engagement with relevant authority reveals the flaws in Defendant's removal.

**1. The claimed federal privilege is not "necessarily raised."** A federal issue is "necessarily raised" only when it is a "*necessary* element of one of the well pleaded state claims." *Minnesota by Ellison*, 63 F.4th at 711. "This inquiry demands precision," and the removing defendant must "point to the specific elements of [the plaintiff's] state law claims" that require proof under federal law. *Id.* In *Ellison*, the defendants claimed federal question jurisdiction existed because the plaintiff's claims "necessarily raise issues governed by federal common law."

Defendants cited various federal statutes that could be implicated or asserted as a defense. *Id.* In rejecting the argument, the Court concluded, "[b]ecause federal law is not a necessary element to any of [plaintiff]'s claims, the complaint doesn't "necessarily raise" a federal issue." *Id.* at 712.

Plaintiff's state law negligence claim can be proven or defeated without construing § 299b-22 at all. Whether the privilege applies or shields documents is a discovery question that arose only because Defendant raised it defensively. As the Eighth Circuit explained in *Ellison*, such a conflict "speaks to a potential defense on the merits of those claims … rather than to the jurisdictional issue." *Id.* at 712. The privilege is not an element of Plaintiff's claim, so it is not "necessarily raised." This has been the law since 1887. *See Franchise Tax Bd. of State of Cal. v. Const. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 10 (1983) ("[S]ince 1887, a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law."), *citing Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 153 (1908) (dismissing for lack of federal jurisdiction where the complainant did not in the assertion or proof of its cause of action bring up a single federal question, and rejecting federal jurisdiction based on a defendant's anticipated defenses).

Comparing the facts of the instant dispute to the Eighth Circuit's ruling in *Wullschleger v. Royal Canin U.S.A. Inc.*, finding the *Grable/Gunn* test satisfied as to plaintiff's state-law claims for unjust enrichment and antitrust violations, the distinction is clear. 953 F.3d 519 (8th Cir. 2020). In *Wullschleger*, the plaintiffs' class action petition included antitrust and unjust enrichment claims that recited no fewer than 20 paragraphs recounting specific claims that the defendants (1) violated the Federal Food Drug and Cosmetic Act ("FDCA"), (2) were not compliant with Federal Food and Drug Administration ("FDA") guidance, and (3) improperly refused to submit prescription pet food to FDA review. *Id.* at 522. The plaintiffs specifically alleged that the Defendants conspired to market pet food "in violation of federal and state law." *Id.* The Court found that the plaintiffs'

dependence on federal law permeated **<u>the allegations</u>** such that the antitrust and unjust enrichment claims could not be adjudicated without reliance on and explication of federal law. *Id.*

After the plaintiffs amended their claim such that it no longer asserted claims under or mentioned the FDCA, the *Wullschleger* case ended up at the Supreme Court of the United States. 604 U.S. 22 (2025). The Supreme Court unanimously held that post-removal amendment of a complaint to remove all federal questions deprived the federal court of jurisdiction, and ordered remand to state court. *Id.* Again, the plaintiff's affirmative claims drive the analysis.

Defendant's best attempt at manufacturing a federal question is where he suggests what "plaintiff believes" in his Notice. At Paragraph 11, for example, Defendant represents to this Court that plaintiff believes "disclosure of peer-review committee proceedings" would support her case. However, review of Plaintiff's actual requests reveals this to be an untrue statement. *See Plaintiff's Fourth Motion to Compel*, *Exhibit 1* at Requests 23-25, 27-29 (filed March 5, 2026).

We are not here to relitigate Defendant's failed claim of privilege; we are here to evaluate whether federal question jurisdiction exists. Plaintiff's state law negligence claim does not rely on proving a violation of federal law. A Defendant in a medical negligence case having a large amount of prior similar mistakes, and the Plaintiff pursuing discovery related to those mistakes, does not convert a state court claim into a federal claim. Because no federal issues are "necessary elements" of Plaintiff's claims, Defendant fails this *Grable* requirement. This should end the inquiry.

**2. The privilege issue is not "substantial" in the relevant sense.**

Even assuming the privilege question were necessarily raised by Plaintiff's claims, substantiality "looks … to the importance of the issue to the federal system as a whole," not to the parties. *Gunn*, 568 U.S. at 260. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit"; "something more, demonstrating that the question is

significant to the federal system as a whole, is needed." *Id.* at 263-64. Issues that are "fact-bound and situation-specific" are "not sufficient to establish federal arising under jurisdiction." *Id.* at 263.

In *Grable*, the federal issue was substantial because the case turned solely on the validity of the IRS's action relating to the sale of a taxpayer's property, which in turn rested on the construction and interpretation – more than merely the application of – federal law. *Grable*, 545 U.S. at 313; *Roberts*, 2023 WL 6213654 at *13 (In *Grable*, "A federal question was the whole ball game."). "Grable presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases.'" *Empire Healthchoice Assur., Inc. v. McVeigh* 547 U.S. 677, 700 (2006). That is simply not the case here.

Supreme Court case law suggests three factors to consider to determine if a federal issue is substantial: (1) whether the issue will have broad impact on the federal government, *Gunn*, 568 U.S. at 260; (2) whether the issue presents a pure legal question, *Empire Healthchoice Assur., Inc.*, 547 U.S. at 700; and (3) whether the federal law underlying the issue provides for a federal cause of action, *Grable*, 545 U.S. at 318. Here, all of the factors weigh against substantiality: (1) a state court finding that a Defendant failed to establish a privilege after given numerous opportunities will have no impact on the Federal Government, who is not a party and is not involved in this case; (2) entitlement to an evidentiary privilege is not a pure legal question, it is fact-bound and situation-specific, as it explicitly <u>requires</u> evaluation of <u>facts</u> set forth by the party asserting the privilege; and (3) the PSQIA does not provide for a federal cause of action for medical malpractice.

This Court recently applied *Gunn* to recognize that a federal issue may be both "necessary" and "actually disputed" yet still not "substantial" where its resolution produces no "real-world result" beyond the case and is not "significant to the federal system as a whole." *HJR Equip., Inc.*, 603 F.Supp.3d at 705. Of course, a state court's ruling that a Defendant failed to meet its burden under any theory of privilege – whether a generic "quality assurance privilege" as imagined by

Defendant, or a real world privilege (including RSMo 537.035 or 42 U.S.C. 299b-22) – is likely "significant" to the party who has to turn over the documents depicting his history of missed reads. However, the ruling is inconsequential to the federal system as a whole. The Court did not invalidate a federal privilege. The Court found that the Defendant failed to meet his burden to establish a privilege. The Court's Order is not "controlling in numerous other cases"; it would bind only the parties to this suit. *Gunn*, 568 U.S. at 262. That is not a substantial federal question.

Try as they might, Defendant cannot convert a discovery order finding that he failed to establish claimed privileges, despite dozens of pages of briefing, into an issue that is significant to the federal government. Because the *Grable/Gunn* test is conjunctive and Defendant fails the "necessarily raised" and "substantial" requirements, the doctrine supplies no basis for jurisdiction.

**3. Asserting Federal jurisdiction unnecessarily disrupts federal-state balance**.

Accepting Defendant's theory would allow removal of virtually any state malpractice case where a party invokes a federal discovery privilege. This is an untenable expansion of federal jurisdiction over historically state law claims. It is therefore not surprising that Defendant made no effort to satisfy this requirement. Defendant failed to meet its burden here as well.

## III. The Removal is Untimely and Improper

Under 28 U.S.C. 1446(b)(1), a notice of removal must be filed within thirty days after receipt of the initial pleading. Where the initial pleading does not reveal the basis for removal, § 1446(b)(3) permits removal within thirty days of receipt of "an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." Regarding the threshold issue of timeliness, the critical question is: when did Defendant's PSQIA theory **<u>first</u>** become ascertainable? ***<u>If</u>*** Defendant's theory of federal jurisdiction were correct – which it is plainly not – the case would have been removable no later than January 16, 2026, making this removal untimely by over six months.

Defendant contends in his Notice that the case became removable upon the entry of the August 18, 2026 Discovery Order. However, the Notice of Removal itself acknowledges that:

1) Plaintiff filed her Petition for Damages in the Circuit Court of Greene County on March 12, 2025.

2) Defendant filed a Motion for Protective Order invoking the PSQIA on January 16, 2026.

3) Plaintiff responded to that motion on April 14, 2026, expressly setting forth how Defendant failed to satisfy the PSQIA.

4) The parties fully briefed PSQIA privilege issues before the state court over six months.

Under Defendant's own theory of jurisdiction, the purported federal question was ascertainable at each of the above junctures, all of which predate removal by months. Defendant contends that the August 18, 2026 Order caused this case to become removable. But an adverse ruling does not make a case newly removable, it simply resolves a disputed issue that was already present. The federal question, if it existed, was present the moment the PSQIA was invoked, not when the Circuit Court ruled in Plaintiff's favor. Defendant cannot get around this fatal flaw.

Plaintiff searched for case law wherein a discovery order regarding the PSQIA gave rise to federal question jurisdiction and found none. Plaintiff searched for case law wherein a discovery order *of any kind* gave rise to federal question jurisdiction and found none. Instead, Plaintiff found cases where parties attempting to remove in the middle of a lawsuit were denied because any arguable federal jurisdiction would have been apparent from the first time the federal issue was raised. *See e.g. Calderon v. Jackson County, Mo.*, 2026 WL 2149953, *3 (W.D. Mo. July 27, 2026) (Defendant's meritless federal question removal was also untimely); *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160, 1162 (8th Cir. 2013) (statements made at oral argument and later transcribed satisfy § 1446(b)(3)'s "other paper" requirement and start the 30 day clock); *RLR Investments, LLC v. City of Pleasant Valley, Mo.*, 2019 WL 1472109, *3 (W.D. Mo. April 3, 2019).

A party cannot invoke a federal statute as a discovery shield in state court for six months, lose, then claim a federal question only became ascertainable when the state court ruled against him. The federal issue was not created by Defendant's loss. At best, it was "created" by Plaintiff's discovery requests and Defendant's invocation of the PSQIA in response. That occurred in January 2026 at the latest. Because the removal is untimely, it is procedurally defective under § 1446(b), and the Court should remand on timeliness grounds without reaching jurisdictional merits.

## B. PLAINTIFF SHOULD BE AWARDED COSTS AND ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1447(C) DUE TO IMPROPER REMOVAL

### I. Legal Standard

When a court remands a removed case, it may award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has held that fee awards are appropriate "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141, (2005). In determining whether the removing party lacked an objectively reasonable basis for seeking removal, the district court does not consider the motive of the removing defendant. *Bowler v. Alliedbarton Sec. Servs., LLC*, 123 F.Supp.3d 1152, 1160 (E.D. Mo. 2015). Rather, the court must consider the objective merits of removal at the time of removal. *Id.* Notably, bad faith is not a prerequisite to awarding attorney fees and costs under § 1447(c). *Calloway v. Union P.R. Co*., 929 F.Supp. 1280, 1283 (E.D. Mo. 1996) ("[a]n award of attorney fees on remand is discretionary and not dependent upon a finding of bad faith"). In making this determination, "the key factor is the propriety of the defendant's removal." *See Lytle v. Lytle*, 982 F.Supp. 671, 674 (E.D. Mo. 1997).

The purpose of § 1447(c) fee awards is not punitive. Rather, it is to deter improper removals that waste judicial resources and force plaintiffs to incur unnecessary expense litigating the proper forum. *Martin*, 546 U.S. at 140-41. This is clearly a case of improper removal.

## II. Defendant Lacked Any Reasonable Basis for Removal

### 1. The Removal Violates Law That Has Been Settled Since 1908

The foundational defect in removal is that a federal defense cannot create federal question jurisdiction. This is not a close or developing question of law. It is the rule of *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908), which has governed federal question jurisdiction for over one hundred years. The case is in first year Civil Procedure coursework. The Supreme Court has reaffirmed it repeatedly. *See Franchise Tax Bd.*, 463 U.S. 1, *Caterpillar Inc.*, 482 U.S. 386. The Eighth Circuit applies the rule without exception. *Ellison v. Am. Petroleum Inst.*, 63 F.4th 703.

Defendant's entire jurisdictional theory rests on a privilege asserted as a discovery defense. He does not allege a federal cause of action appears in Plaintiff's petition, because none does. Under *Mottley*, that ends the inquiry. Removal premised on a legal theory that has been squarely and continuously rejected for over a century cannot constitute an "objectively reasonable basis" for removal under *Martin*. *See Lytle*, 982 F.Supp. at 674 (awarding fees where "even a cursory examination" of the law should have given the removing party "pause before seeking to remove"); *Owens v. Moreland*, 2015 WL 2200352, *2 (M.D. Fl. 2015) (awarding fees when "[t]here was no federal claim or any arguable basis for a federal issue raised in any of the three complaints, and there could be no removal based upon a counterclaim even if the federal statutes cited by defendant actually existed"); *Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*, 512 Fed.Appx. 485, 2013 WL 216026, *6 (6th Cir. 2013) (awarding fees where the precedent governing removal was well settled and therefore defendant's removal attempt was not objectively reasonable).

The appellate attorneys hired specifically for this removal are experienced federal practitioners. They knew *Mottley*. The violation of this foundational rule was not inadvertent. It was a deliberate litigation choice made with full knowledge that the law was against them.

**2. Untimeliness Is Apparent on the Face of Defendant's Own Notice**

An independent basis for a fee award exists where the timeliness defect is apparent on the face of the removing party's notice. Removal was required within thirty days of service of process. At the very latest, it was due within thirty days of Defendant invoking the PSQIA on January 16, 2026. This is a basic conclusion that any reasonable attorney would have reached with minimal reflection. A removing party who files a notice of removal containing the very timeline that defeats it has not conducted the minimum research *Martin* requires. *See Calderon*, 2026 WL 2149953, *3 (defendant's meritless federal question removal was also untimely on its face).

**3. No Court Has Ever Endorsed This Removal Theory**

Perhaps the most telling indicator of objective unreasonableness is the complete absence of any authority supporting Defendant's removal theory. Defendant's Notice cites *Grable* and *Gunn*, which define and *limit* embedded federal question jurisdiction, but cites not a single case in which a court found that a state court's adverse ruling on a PSQIA privilege claim created federal question jurisdiction sufficient to support removal of a medical negligence case. In twenty years of PSQIA litigation since the statute's enactment in 2005, no federal court has endorsed this theory. This is not a novel question that reasonable attorneys might answer differently – it is a question that has never been answered in Defendant's favor, in any court, anywhere. When "review of the relevant authorities should have persuaded defendant" that the law was against it, fee awards are appropriate. *Dead Kennedys v. Biafra*, 46 F.Supp.2d 1028, 1031 (N.D. Cal 1999).

**4. The Circumstances of the Removal Confirm Its Objective Unreasonableness**

While the *Martin* standard is objective and does not require a finding of bad faith, the circumstances surrounding a removal are relevant to evaluating whether an objectively reasonable basis existed. *Bowler*, 123 F.Supp. 3d at 1160. The circumstances here are compelling:

- Defendant litigated the PSQIA privilege issue in state court for **six months** without raising a federal question.

- Defendant filed *Fourth* and *Fifth* supplemental briefs, after being given additional time by the Circuit Court to marshal his evidence, with no mention of federal jurisdiction.

- Defendant hired two additional appellate-level attorneys for the removal, which was filed on the production deadline.

- The removal was filed **late in the afternoon** on September 1, 2026, the last hours of the last day Defendant was required to produce documents.

- Defendant simultaneously filed a motion to stay, confirming the removal's purpose was to halt the production order rather than to litigate in an appropriate forum.

- The Notice of Removal itself does not even attempt to satisfy the *Grable* requirements.[2]

- Defendant was monetarily sanctioned for other discovery violations during the same period.

- Plaintiff is going to lose her January 2027 trial date due to this removal.

No objectively reasonable attorney surveying the record, including six months of state court litigation with no federal question raised, no supporting authority, and removal on the production deadline, could conclude that this removal was proper. The conclusion is inescapable: this removal was filed to delay compliance with a valid court order and to force Plaintiff to expend resources re-litigating forum in federal court rather than preparing for a January 2027 trial. That is precisely the conduct § 1447(c) is designed to deter.

### III. A Fee Award Serves the Purposes of § 1447(c)

The Supreme Court in *Martin* identified the twin purposes of § 1447(c): compensating plaintiffs for expenses caused by improper removals and deterring future improper removals. Both purposes strongly support a fee award here.

[2] For example, Paragraph 20 purports to satisfy the "federal-state balance" requirement, but it does nothing more than recite the federal statute.

**On compensation:** Plaintiff is a stroke victim who has been litigating since March 2025. She has now been forced to brief removal jurisdiction in federal court, will almost certainly lose her January 2027 trial date, and faces additional delay in a case that has already been pending for eighteen months. The costs incurred responding to this removal are real and were avoidable. Upon request of the Court, Plaintiff will submit a supplement addressing the time spent responding to this motion and the Motion to Stay.

**On deterrence:** If a defendant can spend six months litigating a discovery dispute in state court, lose, and then remove to federal court on the production deadline with no supporting authority and no colorable jurisdictional theory, without consequence, the removal statute becomes a tool for delay that sophisticated defendants will use routinely. A fee award here sends the appropriate signal that this Court is not the place to seek refuge from state court discovery orders.

WHEREFORE, for the reasons stated herein, plaintiff respectfully requests this cause be remanded to the Circuit Court of Greene County, Missouri and for her costs and attorney fees in responding to Defendant Albrektson's improper removal.

**Respectfully submitted,**

**GORNY DANDURAND, LC**

**By:** ***/s/ Christopher D. Dandurand***
**STEPHEN M. GORNY MO #45417**
**CHRISTOPHER D. DANDURAND MO #63775**
**4330 Belleview Avenue, Suite 200**
**Kansas City, MO 64111**
**(816) 756-5071 – Telephone**
**(816) 756-5067 – Facsimile**
**steve@gornylawfirm.com**
**chris@gornylawfirm.com**

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on September 15, 2026, this document was filed electronically with the Clerk of court using the CM/ECF system which will provide notice of electronic filing to all counsel of record.

By: /s/ Christopher D. Dandurand
ATTORNEY FOR PLAINTIFF